**UNITED STATES of America, Respondent-Appellant,**

v.

**Demetrios BOUBARIS, Petitioner-Appellee.**

**No. 156, Docket 24013.**

United States Court of Appeals
Second Circuit.

Argued Feb. 13, 1957.

Decided May 8, 1957.

99

Hincks, Circuit Judge, dissented.

Paul W. Williams, U. S. Atty., S. D.
New York, New York City (Burton S.
Sherman, Howard A. Heffron and George
M. Vetter, Jr., Asst. U. S. Attys., New
York City, of counsel), for respondent-
appellant.

Leo E. Ypsilanti, New York City (Ed-
ward Kroin, New York City, of counsel),
for petitioner-appellee.

Before HINCKS, LUMBARD and
WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal from an order of
the District Court for the Southern Dis-
trict of New York granting the petition-
er's application for naturalization as a
citizen of the United States. In re Bou-
baris, 1955, 134 F.Supp. 613.

The facts are uncontroverted. The pe-
titioner entered the United States on May
24, 1947 under a seaman's conditional
landing permit valid for 29 days. He de-
parted with his ship 6 days thereafter.
On July 12, 1947 he again arrived in the
United States on the same vessel but was
denied entry and was detained aboard
ship as a mala-fide seaman. Six days
later he jumped ship and has remained in
the United States illegally ever since.

On September 29, 1950 Boubaris was
inducted into the Armed Forces and was
discharged honorably on September 12,
1952. While in service he never left the
United States. After his separation from
the Army, the Immigration and Naturali-
zation Service brought deportation pro-
ceedings against Boubaris and in an ad-
ministrative hearing, held on November
14, 1954, a determination was made that
he was in the United States unlawfully,
in violation of the Immigration and Na-
tionality Act of 1924 (8 U.S.C.A. §§ 213,
214).[1] He was given the opportunity of
voluntary departure.

On December 22, 1954 Boubaris filed
a petition for naturalization under Pub-
lic Law 86, 83rd Congress (1952), 8 U.S.
C.A. § 1440a, the pertinent portion of
which reads:

"* * * Any person * * *
who * * * actively serves, honor-
ably, in the armed forces of the Unit-
ed States for a period * * * not
less than ninety days and * * *
(2) having been lawfully admitted to
the United States, and having been

1. Now 8 U.S.C.A. §§ 1181, 1251.

physically present within the United States for a single period of at least one year at the time of entering the Armed Forces, may be naturalized * * * ".

The petition was opposed by the government on the ground that the single period of physical presence required by the statute must commence immediately after a lawful entry. Judge Edelstein rejected this distinction, holding that any lawful entry and any one year period of physical presence in the United States were sufficient to satisfy the requirements of the statute. We do not agree.

■■ The only fair construction of the statute requires that the lawful admission and physical presence sequence be immediately consecutive. We have found nothing contrary in the legislative history of the bill. Congress did not require the applicant for naturalization under this statute to prove that his physical presence throughout the required period prior to his induction was lawful. See H.R. 223, 83d Cong., 1st Sess. (1953). Mere physical presence after a lawful admission is sufficient to qualify him. But there is no demonstrated legislative intent permitting the applicant to rely upon a lawful admission that has no connection with the one year period of physical presence within the country.

Where Congress has meant an unlawful admission to be no bar to naturalization, it has specifically so provided. See e. g. 8 U.S.C.A. § 1001 (1946 edition) 58 Stat. 886, 887 (1944); where the language is: " * * * being unable to establish lawful admission into the United States," and also 8 U.S.C.A. § 1440 (1952), which contains similar language.

The decision of the district court is, therefore, reversed with instructions to vacate the order and deny the petitioner's application for naturalization.

HINCKS, Circuit Judge (dissenting).

Judge Edelstein found, and no one disputes, that in this case there was a literal compliance with the requirements of 8 U.S.C.A. § 1440a and granted the petition for naturalization. The Government appeals, however, on the ground—as stated in its brief—that the Act, although it does not say so, should be interpreted to require "that the one year physical presence must directly follow a lawful admission to the country."

The Act was plainly adopted as a reward to certain aliens who accepted the burden of service in our armed forces. Its thrust may be contrasted with that of 8 U.S.C.A. § 1426 which debars from future citizenship those who assert their alienage to escape such service. The structure of § 1440a is so simple that Congress must have realized that the language used failed to provide continuity between the lawful admission and the "single period of at least one year." Indeed the requirement of a *single* period of presence imports that Congress foresaw that occasionally after a lawful admission the alien might come and go, or go and come. Yet Congress failed to provide that a subsequent illegal entry should, for purposes of the Act, nullify a previous lawful admission. It expressly provides that the period of physical presence should immediately precede "the time of entering the Armed Forces." Its failure to provide that the period should immediately succeed the lawful admission, it is reasonable to infer, was intentional.

The prototype of this Act which provided special naturalization privileges for noncitizens who had served in World War I or in World War II, did not include as a prerequisite either lawful admission to the United States or any stated period of residence or physical presence therein. 8 U.S.C.A. § 1440, 66 Stat. 250. House Report 223 which accompanied H.R. 4233 (in which the Act here involved, § 1440a, had its genesis) although disclosing an intent to provide somewhat parallel treatment for aliens serving honorably in the Korean hostilities, contains utterly nothing indicative of an intent to require that the one-year's presence must immediately succeed the new requirement of a lawful admission. House Report No. 223, 83rd Cong., 1st Sess., 1953. It is true that the Act which emerged, § 1440a, is less lib-

eral to the service-man than its prototype. But it does not follow that the beneficent provisions of the Act should be restricted by judicial interpretation.

Finding nothing in the case law and nothing in the language or history of the Act which supports the restrictive interpretation which the Government urges, I would affirm.